Good morning, members. Robert Berg for Appellant James Comer. May it please the Court. Dr. Scholl's custom-fit orthotic inserts. That's the product at issue in this New York Consumer Class action. Custom-fit orthotic. That's the big lie here. Custom-fit orthotic is what defendants deceptively name and market to consumers at a premium $50 price point what are really just cheap cushioned shoe inserts that they otherwise sell for $10. Defendants use a fancy high-tech computerized custom-fit orthotic kiosk with flashing colored lights and 2,000 pressure sensors like Wizard of Oz designed to mislead a reasonable consumer into believing that he is directed to a particular Dr. Scholl's custom-fit orthotic device that conforms to his unique foot anatomy and will provide him with immediate all-day relief from foot pain, knee pain, and back pain. This is a very sophisticated deceptive marketing program which violates sections 349 and 350 of New York's general business law. The trial court dismissed it. Let me ask you this. How would the reasonable consumer think that it was being designed specifically, they were, for him if all he could choose from were the 14 different sizes on the machine itself? I mean, how do you think, like, well, I've stood on this thing and now they're forming it exactly to my foot, but is it going to spit out two inserts for me or do I just choose from these 14 that are on the shelves here? It's not that the consumer expects there's a fabrication device inside the machine that's churning out a special customized orthotic device. The consumer is being told that there are these pressure sensors. He stands on this fancy computerized machine. It's mapping his foot. It's mapping the pressure points. It's taking all these various sophisticated measurements. And it's then going to direct the consumer to one of the 14 already available products that meet the unique characteristics of the consumer's foot. So there are 14, the consumer is led to believe there are 14 available products, and the custom foot, custom orthotic device is going to, one of these 14 devices will fit his unique foot anatomy and then provide him with immediate all-day relief of foot pain, knee pain, and back pain. And a consumer should be able to reasonably rely on a representation that this is a custom foot orthotic is that term is reasonably understood in the marketplace. And that's not just a cheap cushion insert. You can see that the 14 were different from one another. Well, they're different in some respects, yes. Remember, you're dealing with an over-the-counter product, a reasonable consumer who's not an orthopedist, so the level of deception is different. You have to be able, as a consumer, to rely on a representation that you're getting a custom foot orthotic. But you would have to have a consumer who thinks that by some odd chance one of these 14 boxes was actually made for that consumer's own two feet. Well, a consumer would expect that one of these 14 products will, after all these measurements, will fit his unique foot anatomy and then provide him the all-day relief that the defendants say it will. Well, let me give you a hypothetical. Let's say the machine said, well, there are three sizes, you know, small, medium, and large. You're medium. And just take the medium box. Would any sensible consumer believe that the box marked medium is custom-fitted to their own feet? Well, here you have 14 possibilities. Well, I just started with three, so... At some point there's a line to be drawn. Three might be more obvious to the consumer that this kind of advertising is misleading. Remember, here the New York State law is very broad. It provides, is there a capacity to mislead a reasonable consumer? Here you have this very fancy device. They're making explicit representations on the device itself that this is a custom orthotic, that custom-fit orthotic. So the district court here never even went and analyzed what does the term mean, custom-fit orthotic, to a reasonable consumer. That's the critical starting point before you go further. What does that mean to a reasonable consumer? You can't decide that as a matter of law. You need, it's a factually specific determination. It requires expert testimony, probably consumer surveys, things of the like, and you can't just jump and say what does, you have to decide what a custom-fit orthotic is. Now, in the complaint we allege what a custom-fit orthotic is. We use the American Academy of Podiatrists. Their definition, we give an elaborate discussion of what a custom-fit orthotic is and what it's not, and this is clearly not a custom-fit orthotic. You've reserved a couple of minutes, Roberto. Yes. We'll hear you then, sir. Good morning, Your Honors. May it please the Court, Eugene Schoon on behalf of the Bayer Appellees here. We've seen both in the district court and in the appellate court that the plaintiff is taking kind of two different roads here. Paragraph, if you, I always go back to the complaint, this is on a motion to dismiss, and I direct Your Honors to paragraph 17 in particular as to what it is that he is, Mr. Comer, is alleging he was expecting here, and that was, and I'm quoting here, he was led to believe and believe that the Dr. Scholl's custom-fit orthotic insert products he purchased were actually custom-fit inserts individually designed for each of his feet, which could and would alleviate his foot pain. And, in fact, he got what we say was obvious he was getting, which is an off-the-rack product. He says essentially the same thing in paragraph 40. That's argument one. Whatever Mr. Comer thought when he walked into the Walmart in Saratoga Springs in 2014, he could not plausibly believe that something was being made for his individualized feet. When he was directed, and he says multiple times, he was directed multiple times to take this particular model off the shelf, the model. That's what he alleges in paragraph 14 of his complaint. That's one argument. It's just not plausible. He's got a little bit different argument, and that's that somehow consumers were led to believe that this was the functional equivalent, and Judge Katz addresses this as well, of what he would get as he did when he went to his podiatrist or chiropractor in this case in 2011, something that was functionally equivalent to what a doctor would prescribe. Well, there are several answers to that. First of all, that's not Mr. Comer's allegation of what he believed. But if we take, and I think you need to, look at this as a reasonable, objective consumer would acting reasonably. That's what Oswego Labor calls for. There are several answers to that. First of all, aside from it not being Mr. Comer, there's nowhere that Bayer ever represented or Dr. Scholz ever represented that that's what this product was. All the plaintiff can do is say, well, it was this kiosk, and it was priced more than another product, and it was put next to cheaper products. And it was called a custom orthotic. And it's called custom orthotic. Of course, we've got the name there. But not only is that not a representation, that is the functional equivalence, but to the extent any consumer might think that this was the same thing as going to a podiatrist, we have a disclaimer. And we say, this does not take the place of your podiatrist. If you have a medical problem, see your podiatrist. This is, after all, it's an over-the-counter product. He's being asked to buy something that's off the shelf. And then thirdly, and I think this is also the plaintiff's theory of the case, if you look at what they mean by a custom, this doctor-prescribed custom-fit orthotic, then you need to look, again, going back to the complaint, to paragraph 29 in there. And I won't go through it, but this is on appendix page 16. There's this long, elaborate process of measurements and of casting and of muscle examination. Our position, Your Honor, is no reasonable consumer, in light of all those factors, could conclude that this was functionally equivalent to what they would get going to see a podiatrist. What was the difference in price between the 14 ones on the kiosk and you just go down the aisle at CVS and you get the one men's insert for your right foot, fits a size 7, a size 12? I believe the allegation in the complaint is that these custom-fit orthotics were approximately $50. I checked Walmart this morning, $49.99, and the others were approximately $10, so $30. Was that part of the plaintiff's argument, though, that the reasonable consumer would have thought, gee, if it's $50, they must really have been looking at my foot with this machine, and this must really fit one of the 14 ones available? Sure, and that's part of the argument. But, of course, the others, the alternative is a small, medium, large. The consumer isn't given any guidance as to what might be best for them other than what they can read. Here, at least, we're helping the consumer. There are 14 different models, and based on what the kiosk provides, which recommends the best product for this particular consumer, they can choose. It's an over-the-counter product. There's no secret here. They just pull it off the shelf. All 14 are different from each other? All 14 are different, Your Honor, yes. And there's no contention otherwise. There's no contention that the kiosk doesn't do what it says it does, which is measure 2,000 different pressure points. In fact, they allege, and I think it's around paragraph 31 or 32 at Appendix 18, what the kiosk does. It measures foot length, measures arch type, and it measures pressure points. And based on that data, those three simple things compared to the elaborate thing that you would see at your podiatrist recommends a particular model. So, Your Honors, we think Judge Batts did a very good job of analyzing the complaint, looking at the allegations, what a reasonable consumer would do, and applied the appropriate precedents. We'd ask the Court to affirm. Of course, one thing we need to look at first to determine our jurisdiction is whether the plaintiff has standing here, and Judge Batts did address that. Do you care to comment on that? This is one area where we part company with Judge Batts, although we didn't address it in the brief. If there was no standing, and the standing issue really only goes to the injunction relief, we don't think she should have ever reached that. And if this were purely dismissed on standing, this would be a 12B1 dismissal, and it would be without prejudice. But instead, she found there was no cause of action here at all, and we think that's the right analysis. If you just reverse the order, she would have never gotten to the standing issue unless she was just interested in that. But because there's no cause of action. Yes, it determines standing, too, which is a matter of jurisdiction. Yeah, of course, and we briefed it. I mean, as a matter of responsibility to the Court, we think we need to bring jurisdictional issues. So I don't think that changes the outcome here. I would ask this Court, in considering this, it doesn't need to reach that issue. It can affirm based purely on the 12B6 arguments we raised. Thank you. Thank you, Your Honors. Your Honors, Bayer is arguing here that a custom-fit orthotic is not a custom-fit orthotic, and no reasonable consumer can reasonably believe that their product is what they say it is, a custom-fit orthotic. No, the argument is no reasonable consumer who happened to know what a custom-fit orthotic is would believe that that could be delivered in 14 different boxes. But does a reasonable consumer know what a custom-fit orthotic is? Well, if they don't, then how are they misled by the term custom-fit orthotic? I think it's something, they're looking at this machine that says custom-fit orthotic, this fancy machine. For $50, I can get, I've heard about custom-fit orthotics. I don't precisely know what it is, but it can alleviate my pain. It can alleviate my back pain, my knee pain. All I have to do is stand on this machine, 2,000 sensors taking all of my measurements, and it's going to direct me to the product that will fit my unique foot anatomy. And that's misleading here, because it's really junk. It's just a cushioned insert that you can buy for $10 right down the aisle. And that's really a deception here, and it's certainly an actionable deception. As to the disclaimer, the disclaimer at the kiosk just says, the machine does not diagnose medical conditions, and it's not intended to take the place of your podiatrist. It does nothing to address the deception here, which is, what is a custom-fit orthotic, and why is this not a custom-fit orthotic? So it's completely irrelevant to the analysis. I don't know why you say that. It says, this doesn't take the place of your foot doctor. Right, and so what? They are claiming that the machine contains a foot doctor. And no one's asking you to. They're saying, if you want, the machine says, immediate all-day relief of foot pain, back pain, knee pain. Everything you were saying, if ever someone knows that a custom-fit orthotic is something that is created by a doctor after an examination, then they would know that the machine is not a podiatrist. A reasonable consumer doesn't necessarily know what a custom-fit orthotic is, but they know that this is a fancy device here that will direct them to one of these 14 products that will cure their foot pain, knee pain, and back pain, all-day immediate relief. That's what it says on the kiosk. And that's what's misleading to all these consumers who are directed to pay $50 for a worthless product that they can waste their money for $10 on down the aisle. And that's a problem. Thank you. Thank you. Thank you both. We will reserve decision.